The case this morning is 4-13-0346, State of Illinois v. Christopher Gaede or Gaede? I believe it's Gaede, Your Honor. Let's see, Attorney McNeil is here on behalf of the State and Attorney Williams is here for the appellant. Mr. Williams, are you ready to proceed? I am.  Thank you, Your Honor. May it please the Court? Counsel? Mr. McNeil, my name is James Ryan Williams and on behalf of the Office of the State Appellant Defender, it is my privilege to represent Mr. Gaede before this Honorable Court. An evidentiary tool, that is what this case is about. By its very nature and design, Illinois' implied consent statute is an evidentiary tool. It seeks to extract objective evidence of intoxication in the form of blood, breath, or urine analysis from anyone who has been arrested for DUI. I use the word extract because the State threatens that refusal to submit to chemical analysis will be punished with what the Supreme Court has recently described as significant civil and criminal consequences. One not only loses driving privileges for at least a year, but is also prejudiced at their subsequent criminal trial because the State is allowed to admit one's reliance on Fourth Amendment rights as substantive evidence of guilt. So the State threatens its people with significant civil and criminal consequences to induce submission of incriminating evidence, and if one refuses this State intrusion into their body, refusal evidence is generated nonetheless. So there can be no doubt that Illinois' implied consent statute is indeed an evidentiary tool. And though the value of blood alcohol evidence cannot be denied, the scheme by which it is obtained here in Illinois is constitutionally infirm. First of all, the Supreme Court has recognized that like any search that intrudes into the body, beyond the body's surface that is, breath analysis is indeed a search and is therefore subject to the strictures of the Fourth Amendment. And although people have the right, and because breath analysis is a search, people have the constitutional right, as they do with any search, to refuse consent. And although people have this right, Illinois' implied consent statute nevertheless discourages the exercise thereof by punishing anyone who chooses to exercise their Fourth Amendment right. And in that way, the implied consent statute impermissibly circumvents the Fourth Amendment's warrant requirement because to punish the exercise of a constitutional right is to violate that very right. So what we have here is a warrantless, evidence-gathering search scheme that circumvents constitutional protection with the inherently coercive threat of significant civil and criminal consequences. And of course, any search conducted outside of the judicial process is per se unreasonable under the Fourth Amendment, unless of course one of the specifically established and well-delineated exceptions applies. And in fact, in McNeely, the Supreme Court recently held in the context of chemical analysis, specifically blood analysis, that this per se rule applies. And the Court even further held that the warrant requirement applies generally to searches that intrude beyond the body's surface. So accordingly, Illinois' implied consent statute necessarily requires either compliance with the warrant requirement or a warrant exception. And in the context of DUI investigations, there are four warrant exceptions that are typically discussed by courts across this country. And those include special needs, consent, exigent circumstances, and search incident to arrest. The McNeely Court, however, essentially laid to rest exigent circumstances and search incident to arrest as not being per se exceptions in every case holding with respect to exigent circumstances that the natural metabolism of alcohol does not create a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement in all DUI cases. And with respect to search incident to arrest, the Court held that absent an emergency, warrants are required where intrusion into the human body is concerned, even when the search is conducted following a lawful arrest. But the Court in McNeely also reaffirmed shrug, didn't it? Claiming that under certain circumstances, the dissipation of alcohol would justify a search without a warrant. Absolutely, Your Honor, that's correct. And to that end, that's essentially what I propose here is simply either compliance with the warrant requirement or, as the Court made clear at the end of the McNeely decision in the majority opinion, they essentially said that if officers made at least a good temp effort to procure a warrant and nevertheless were unable to do so, that that then would factor towards perhaps a genuine exigency which would then justify a warrantless search at that point. Now, pursuant to Fink v. Ryan, I should first say, with respect to the special needs exception, pursuant to Fink v. Ryan in 1996, Illinois Supreme Court case, Illinois' implied consent statute currently rests upon the special needs exception. However, subsequent clarification from the Supreme Court undermines that holding. To determine whether a search scheme serves a special need, courts look to its primary purpose. And in 1996, the Illinois Supreme Court held that the primary purpose of the implied consent statute was to reduce the dangers posed by chemically impaired drivers. As I mentioned, however, the Supreme Court has since clarified the special needs analysis, and primary purpose is no longer determined by what the search scheme ultimately seeks to achieve, that is, its ultimate goal such as reducing the dangers posed by chemically impaired drivers. Instead, primary purpose is now determined by examining the means employed to that end, that is, its immediate objective. And where the search scheme's immediate objective is to generate evidence for law enforcement purposes, the court has held that the closely guarded special needs exception does not apply. For example, in the city of Indianapolis versus Edmond, the Supreme Court compared Indianapolis' drug interdiction checkpoints with Michigan's sobriety checkpoints. And although both programs ultimately sought to make the community safer, the court nevertheless found that the means employed to that end, that is, their immediate objectives, were constitutionally distinguishable. While Michigan's sobriety checkpoints actually removed drunken drivers from the road, Indianapolis' drug interdiction checkpoints merely sought to gather evidence for law enforcement purposes. And here, unlike the sobriety checkpoints, Elroy's implied consent statute does not aid in the immediate removal of drunken drivers, because it only applies after the person has already been arrested and no longer poses a safety hazard. And the summary suspension only takes place 46 days after the person has received notice. And much like the drug interdiction checkpoints that the court found unconstitutional, the implied consent statute seeks only to gather evidence for law enforcement purposes. As I mentioned at the very beginning, by its very nature and design, Elroy's implied consent statute is indeed an evidentiary tool, because it compels the submission of evidence by threat, and if one refuses, again, refusal evidence is generated nonetheless. And as this court has even recognized, the obvious purpose of the implied consent statute is to provide objective evidence of the offense. So while Elroy's implied consent statute may ultimately seek to make the road safer, the means employed to that end is nevertheless to generate evidence for law enforcement purposes. And for that reason, the special needs doctrine does not apply. And then finally, there's of course consent. And while Elroy's implied consent statute purports to imply consent by virtue of driving on public roads, such implied consent does not constitute consent under the Fourth Amendment. And in fact, the Kansas Court of Appeals recently invalidated a portion of their state statute holding just that, that no case stands for the proposition that implied consent constitutes consent under the Fourth Amendment. And this, it seems, is likely because Fourth Amendment consent must be received. It cannot be extracted by implicit means. And here, implied consent is implicitly extracted because it's a conditioned precedent for receiving a driver's license. And to that end, there is of course the classic statement that driving is a privilege and not a right. And though that is no doubt true, the doctrine of unconstitutional conditions prohibits the state from conditioning a valuable privilege on the relinquishment of a constitutional right. The Supreme Court held as early as 1926, the Supreme Court cautioned that is, that if a state can manipulate a constitutional guarantee out of existence by conditioning a privilege on its relinquishment, it can likewise manipulate any constitutional guarantee out of existence. And since then, the Supreme Court has repeatedly utilized this straightforward legal principle in a variety of contexts, from commercial driver's license to land use permits to government contracts. And in fact, courts across the country have more recently been using the doctrine of unconstitutional conditions in striking down mandatory drug testing of welfare beneficiaries. The fact is the state cannot condition a valuable privilege, such as a driver's license, on the relinquishment of a constitutional right. Because again, if that were permissible, any right could be easily manipulated out of existence. And moving on to the balancing test versus the per se rule, the state here, without any authority, and actually without even giving a reason, suggests that this court's analysis should be guided by the balancing test rather than the per se rule that the Supreme Court just used in McNeely in a very similar context. And though the Supreme Court there was analyzing warrantless blood analysis, and here we deal with warrantless breath analysis, the court nevertheless wrote that the per se rule applies to the type of search that is at issue in this case. And moreover... But your client refused to take the breath test, right? Yes, Your Honor. So he wasn't forced to do anything? No, but he was essentially placed in a situation where he either had to relinquish his Fourth Amendment right or suffer the significant consequences that flowed from that decision. Okay, go ahead. Thank you, Your Honor. Moreover, a review of this issue yields actually no basis in law for utilizing the balancing test. And to the contrary, the case law actually suggests that the balancing test would be inappropriate here. And based on my research, there are essentially two lines of cases that utilize the balancing test in the Fourth Amendment context. And these are Camara and its progeny, and Terry and its progeny. With respect to Camara and that line of cases, they essentially involve Fourth Amendment concerns that are unrelated to a law enforcement purpose. Again, such as is the case with special needs. And the general Fourth Amendment approach, as the state suggests this court utilize here, is derived from this line of cases. However, it has only been used by the United States Supreme Court in two instances in the very limited context of probation and parole. And because here we don't deal with probation or parole, and because the search scheme here serves the primary purpose of gathering evidence for law enforcement, neither the special needs nor the general Fourth Amendment balancing approach would apply. And with respect to Terry and its line of cases, those involve what can be described as a minimal intrusion balancing test. And that test is only appropriate where there is both a very minimal intrusion, and moreover, where compliance with the warrant requirement as a practical matter would basically be impossible. And because here any search beyond the body's surface is constitutionally significant, it's therefore not a minimal intrusion. And moreover, it's perfectly practical for law enforcement to at least attempt to comply with the warrant requirement. And because of these two reasons, the minimal intrusion balancing test is not appropriate either. Doesn't the U.S. Supreme Court in Skinner talk about breath analysis being a minimal intrusion compared to blood draw? I'm not familiar with that part of the case, Your Honor. I'm sorry. But in either respect, it's nevertheless an intrusion into the body. And it seems that the Fourth Amendment protects, as Sackler's saying, intrusions into the human body similar to intrusions into the home. And so in either respect, it may not be a significant physical invasion, but it's nonetheless a significant privacy invasion. Because the state intrudes into the human body, seeking incriminating evidence, and they use technology in doing so. But your client was allowed to refuse the testing. Correct, Your Honor. And that goes to my point that although he was allowed to refuse and thus was allowed to exercise his constitutional right, he was nevertheless punished by doing so. Because at his subsequent trial, the state not only admitted the warning to motorists, from which the jury could have inferred, okay, well, this guy was warned of this significant consequence, such as losing your driver's license, thus what does that tell you? But the state also is allowed to utilize what is known as adverse inference commentary. And so the state here stated multiple times that he refused the test. And then towards the end of the closing argument, just before the jury retired for deliberations, the state even specifically explained that Mr. Gady works out of town, and that his livelihood is dependent upon his driver's license. And it's therefore very telling that he would choose to give up his driver's license rather than submit to the test. And so this is a constitutional error because it constitutes punishing someone for doing no more than exercising their Fourth Amendment right. Just to briefly conclude. Counsel, how do you explain the language in McNeely from the United States Supreme Court, which tends to at least suggest, if not more explicitly state, that the system of implied consent laws throughout the country are acceptable? They don't challenge them at all. And yet you're saying Illinois' implied consent law, which is very similar to many other states, is unconstitutional. First of all, I'd like to point out, I believe the section you're referring to, Your Honor, is actually in a part of the brief that is not part of the majority opinion. I would also note that essentially this question was not before the court, whether these implied consent laws constitute a punishment for exercising a constitutional right. And last, I would point out that frankly I'm not suggesting that the adverse inference commentary or the license suspension is altogether inappropriate. Really all I'm suggesting here is what represents just a minor change to our current procedure. And that is simply that officers should at least attempt to comply with the warrant requirement. And if an officer either complies with the warrant requirement or at least makes a good faith effort to do so, Fourth Amendment concerns have therefore been satisfied and the adverse inference commentary, the driver's license suspension, these criminal and civil consequences would in that case be... So does it mean that the officer has to make a good faith effort? Or does it mean to say if there are exigent circumstances, the warrant is not necessary? Well, of course, if there are exigent circumstances generally, like for example in Schmerber, there was an accident and there was investigation at the scene and some other facts, special facts, the court referred to them, that created an exigency. So of course, if there is indeed a genuine exigency, officers would be exempt from complying with the warrant requirement. Well, how does that fit in with your argument from a minute ago about an officer has to make some kind of effort to obtain a warrant? Well, I guess to be clear, in your typical DUI investigation, where the officer is not facing a genuine exigency, the McNeely court, it was towards the end of the decision, essentially said that if the officer makes an attempt to get a warrant and perhaps he's unable to contact a judge or a magistrate, that would factor towards there being legitimate exigent circumstances, which would then justify a warrantless intrusion in that instance. And so again, essentially, I'm simply suggesting here that officers comply with the basic command of the Fourth Amendment and at least attempt to get a warrant. And if they do so, again... Okay. Is that what McNeely said? That they have to attempt to get a warrant? Because I don't think it does. Well, I don't think it says that they have to attempt to get a warrant. Again, I'm sorry if I'm not making... Well, what's the basis of your argument to us in that that should be something we should find? Well, again, at the end of McNeely, the court essentially suggests that, in a typical DUI investigation where there's no per se exigency, something like an automobile crash or something like that, where they're facing a genuine exigency, that if an officer attempts to get a warrant and perhaps for reasons out of his or her control, he's unable to do so, perhaps the judge is sleeping or whatever, I believe what the court says there is that that would factor towards the exigency. So essentially what the McNeely court is simply saying is that the natural dissipation of alcohol is not a per se exigency and that exigent circumstances still could allow a warrantless intrusion. But that's not the case in every DUI case. Just simply put, it just seems that people should be able to demand, with impunity, a warrant before the government intrudes their body in search of incriminating evidence. And the idea that the state can punish people for simply doing no more than exercising a constitutional right is not just unconstitutional, it's plainly wrong. And unless this court has any further questions, I would just respectfully request that this court find Illinois' implied consent statute facially unconstitutional and accordingly remand this matter for a new trial. Thank you all very much for your time. Thank you, Garth. May it please the court? Although a clarification on the constitutionality of the implied consent statute would be helpful in especially a Fourth Amendment perspective, this court doesn't need to go into the constitutional issue here because there was clearly sufficient evidence to convict defendant regardless of any mentioned by the prosecutor of his refusal of the breath test. This is an example of a DUI arrest procedure that happens probably hundreds of times a day in America. The arresting officer testified the defendant smelled of alcohol, slurred speech, and had glassy eyes, failed field sobriety tests at the scene, failed field sobriety tests again at the police department, and then refused a breathalyzer. Both field sobriety test sets were videotaped, both videos were shown to the jury, and the arresting officer also testified. Clearly there was sufficient evidence here to convict defendant regardless of the anecdotes by the closing argument by the prosecutor. That being said, Illinois implied consent statute clearly doesn't violate the Fourth Amendment. McNeely is completely distinguishable here. It had to do with a warrantless blood draw that was taken over defendant's objection. It was actually taken. Obviously the distinguishing fact here is that Illinois implied consent statute has the section that informs the defendant of his penalty for refusing. In this case, the defendant did refuse for the consequences of the statutory summary suspension. A defendant posits the argument as sort of a defendant's exercising his constitutional right. This court in People v. Lynn, 2009, specifically stated a person arrested for DUI has no constitutional right to refuse to submit to a breathalyzer test. What case was that? People v. Lynn. It's not cited in my brief. I can give you the cite if you want. 904 Northeast 2nd 987. What does it say again? A person arrested for DUI has no constitutional right to refuse to submit to a breathalyzer test. It's Justice Steigman. I think the important part, the defendant objected at that trial that the defendant had a constitutional right to refuse to a breath test as he was cross-examining the arresting officer. So what is it? He has a statutory right to refuse consent, but not a constitutional right? Yeah, I guess you could posit it that way. The interesting thing in Lynn is Steigman says, under defendant's theory, he would have, after informing the defendant, like in Section 11-501.1c requires, under defendant's theory, he would have a statutory right to commit theft simply because our legislature has enacted laws which inform him of the penalties for doing so. Or that he has a statutory right not to file his income tax return because the legislature has provided a penalty for that failure. Here, the defendant was informed that he's going to lose his license, which is not a constitutional right as it's well settled that driving is a privilege, not a right. He refused the breathalyzer and bore those consequences. In McNeely, defendant objected, was still submitted to the non-consensual blood draw, which, as the court says in McNeely, by stating they use the piercing the skin as language in that case, it's clearly more intrusive than a breath test. And in fact, the McNeely court, it is part of the majority, as Justice Turner noted, I'll state their suggestion as to an alternative. They state as follows, as an initial matter, states have a broad range of legal tools to enforce their drunk driving laws and to secure blood alcohol content evidence without undertaking warrantless non-consensual blood draws. For example, all 50 states have adopted implied consent laws that require motorists as a condition of operating motor vehicle within the state to consent to blood alcohol testing if they're arrested on drunk driving. So you, I guess, would argue, as I had questioned about, that that seems to be an approval of the implied consent laws similar to the ones that Illinois has adopted. It's not only an approval, it's a suggested alternative to the methods, the procedure that the police took in this case, which was compelling the defendant, forcing a defendant into the blood test even over his objection. And our Supreme Court in Fisher has noted that our legislature looks down on compelled testing. That's why there's this section that allows refusal of the breath test, albeit with consequences of statutory summary suspension. Again, with McNeely... Counsel, were there exigent circumstances here for the officers to obtain a search warrant to have a blood test or breath test or urine test, whatever the case may be? McNeely acknowledges that the further, the longer you wait, the less probative the evidence is going to be in the event of any chemical testing. My question is, were there any exigent circumstances here? I guess not. The exigent circumstances is sort of a red herring dealing with Schmerber. They found that there were exigent circumstances because I think the defendant in that case was unconscious because of the wreck or something like that. And in McNeely they found... The per se rule that I think a defendant is mischaracterizing in McNeely is that they stated there's no per se exigent circumstances. So in other words, it's not an across-the-blanket rule. But I think that's getting off the beaten path of this case because that case has to do with a non-consensual, actual what can be considered a search. They took the defendant's blood over his objection. Here, the defendant refused. I understand that. Just humor me because sometimes I like to go off the beaten path. So my question is, in your view of these facts, these circumstances, were there any exigencies other than the dissipation of the BAC? Not that I can think of off of the bat. Okay, you can get back on the more well-traveled path now. Well, any path is a good one, sir. But our Supreme Court in Rolfings-Meyer, as far as the... They tackled it from a Fifth Amendment perspective, right against the self-incrimination. They also specifically stated that the evidence of defendant's refusal doesn't violate, isn't a constitutional violation at the criminal proceedings. So that's clearly our Supreme Court. That's been well settled because Rolfings-Meyer is 30 years old at this point and it's still good law. The most important thing that I've found in my research is that McNeely and the other two recent cases, defendant's sites from other jurisdictions, they all have to do with the warrantless non-consensual blood draw. There's no case on point that argues this Fourth Amendment violation from an implied consent. Implied consent statutes are unconstitutional from a Fourth Amendment angle. Any case where the defendant refuses, like in this case, like in Rolfings-Meyer, they tackle it from a Fifth Amendment right against self-incrimination, which makes more sense because there's no search done here anyway. And if you want to say that a defendant was compelled to abandon his Fourth Amendment rights, I mean he would be just as compelled to abandon his Fifth Amendment right against self-incrimination in the Rolfings-Meyer case. And our Supreme Court stated that the implied consent law doesn't violate the Fifth Amendment in Rolfings-Meyer. As far as the evidentiary gathering as the purpose of our implied consent law, again, our Supreme Court in People v. Fisher specifically stated the implied consent statute serves the legislative purpose of promoting highway safety by assisting in the determination of whether drivers suspected of intoxication are, in fact, under the influence of alcohol. It doesn't take much of a logical leap to realize the deterrence factor that the implied consent law has for people that are possibly considering drunk driving. Without that highly probative evidentiary tool, the deterrence of drunk driving is significantly reduced. Of course, there's many cases cited in my brief about the strong legislative governmental interest, state interest, in keeping the highways safe from drunk drivers. Again, all Fourth Amendment analysis touches on reasonableness. That reasonableness is a balance between the intrusion on the person, the intrusion of privacy on the person, and the legitimate government interest. Here, the legitimate government interest is strong, obviously keeping drunk drivers off the highway, as opposed to the minimal intrusion. Again, the defendant wasn't even subjected to a breath test, let alone a blood draw. The defendant refused his breath test and bore the consequences of losing his license. From an intrusion standpoint, it's minimal, especially since the defendant is already under arrest as it is for suspicion of DUI. The Rolfings-Meyer case, and especially the McNeely case, which actually, in the present case, is a successful alternative that the McNeely court outlined. At any rate, the McNeely holding wouldn't have any application outside of that alternative that they suggested as far as the implied consent laws to this holding, because, again, it dealt with a warrantless non-consensual blood draw over a defendant's objection that actually happened, as opposed to here, where the defendant, who has no constitutional right to refuse the breath test, exercised his withdrawal of his implied consent by refusing the breath test and bearing the consequences. At any rate, this isn't a violation of the Fourth Amendment, and there is no case authority that says otherwise. Are there any more questions? I don't see any. Thank you, Mr. McNeely. Mr. Williams, any rebuttal? Thank you. First of all, with respect to your concerns, Justice Turner, at the end of McNeely, what the court says is, other factors present in an ordinary traffic stop, such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. So I guess to be clear, it seems implicit what the court is suggesting is that if the officers do make the good faith effort and something like the unavailability of a magistrate judge prevents them from being able to get a warrant, that again would factor towards the exigent circumstances and would therefore allow a warrantless search. Well, do they use the term good faith effort? To be clear, I don't believe they do. I don't see that in their ruling. Yeah, I don't mean to mislead the court in any way there. I feel like that's kind of essentially what they're saying, just to be clear. And I would just point out that the two passages there at Headnote 12 and 13, just so the court knows, and then with respect to McNeely, again, the part that counsel recites regarding the implied consent, I just want to be clear, that is indeed not part of the majority opinion. The McNeely opinion, it's kind of unusual because there's various sections, and I believe it's Section 3 that that's in, and Section 3, one of the justices essentially breaks off, and that's actually not part of the majority holding, to the extent that that's relevant anyhow. Also, I feel like the state's mischaracterizing McNeely somewhat in suggesting of course the court there does admit that the dissipation of alcohol does affect its probative value, but immediately thereafter the court points out that does not create a per se exigency in every DUI case. And then, as to there being no constitutional right to refuse a breath test. Yeah, I wanted to ask you about that. Have you read People vs. Wind? That was the case that the state cited today. Yeah, I'm sorry, Your Honor, I don't believe that was cited in briefing, and I'm not familiar with that case. Although I suspect that case is perhaps referring to the Fifth Amendment, I'm not sure, but it has been held that there is no Fifth Amendment right to refuse a breath test. The Supreme Court in Neville, I think that's how you pronounce it, it was a 1980s case, what the Supreme Court said in Neville is that they found that refusal is actually a physical act, and thus not a testimonial act, and therefore it doesn't even invoke the Fifth Amendment concerns. And so you can't even say that it's an exercise of a constitutional right. So, of course, then there's no punishment in that circumstance for exercising a right, because, again, the Fifth Amendment does not apply to physical acts, it only applies to compelled testimonial evidence. And the fact is, I mean, the simple fact that the Illinois Supreme Court, for example, has to right now, the implied consent statute is dependent upon the special needs doctrine. I think that alone suggests that, of course, there's a fourth, I mean, the Supreme Court has said this is a search, searches require warrants, and the Illinois Supreme Court has held that a warrant exception applies. That is the special needs doctrine. Of course, as I explained, it's no longer applicable, but because the Illinois Supreme Court holds that a warrant exception applies, clearly, I think, implicit in that holding is the notion that there is indeed a constitutional right to refuse. I mean, the statute even allows it. It would be strange if the statute does not allow for a constitutional excuse me, if the statute allows for a constitutional right if there's a statutory right to refuse, but not a constitutional right, that seems odd to me. And unless the court has any further questions. Thank you very much for your time.